UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE DEUTSCHE BANK AKTIENGESELLSHAFT SECURITIES LITIGATION | Case No. 1:16-cv-03495-AT |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION OF DAMON KNAUSS FOR APPOINTMENT AS LEAD PLAINTIFF,
<u>AND APPROVAL OF SELECTION OF COUNSEL</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 2

ARGUMENT .............................................................................................................. 5

I.       THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ............. 5

    A.    The Procedure Required by the PSLRA ......................................... 5

        1.   Movant Is Willing to Serve as Class Representative .................................. 7

        2.   Movant has the Requisite Financial Interest in the Relief Sought by the Class ................................................................................................ 7

    B.    Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ...................................................................... 8

        1.   Movant's Claims are Typical of the Claims of all the Class Members ...... 9

        2.   Movant Will Adequately Represent the Class ......................................... 10

II.      MOVANT`S CHOICE OF COUNSEL SHOULD BE APPROVED .................. 11

CONCLUSION ......................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Drexel Burnham Lambert Grp.*,
   960 F.2d 285 (2d Cir. 1992)..................................................................... 10

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)............................................................................. 9

*In re Milestone Sci. Sec. Litig.*,
   183 F.R.D. 404 (D.N.J. 1998)................................................................. 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................. 9

*In re Party City Secs. Litig*,
   189 F.R.D. 91 (D.N.J. 1999).................................................................. 8

*In re Razorfish, Inc. Secs. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001).................................................... 2

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)................................................................... 9

*Schulman v. Lumenis, Ltd.*,
   2003 WL 21415287 (S.D.N.Y June 18, 2003) ........................................ 8

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ........................................................ 2

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ....................................................... 8, 9

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984)............................................................. 9, 10

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ................................................. 7, 8, 9, 10

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................. 6

15 U.S.C. § 78u-4(a)(3)(A)..................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B) ....................................................................................... passim

15 U.S.C. § 78u-4(e) ...................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................. passim

## PRELIMINARY STATEMENT

Presently pending before the Court is the above-captioned consolidated action (the "Consolidated Action") brought on behalf of all persons who purchased securities of Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or the "Company"), between April 15, 2013 and April 29, 2016, inclusive ("Class Period")[1].  Plaintiffs in the Consolidated Action allege violations of the Securities and Exchange Act of 1934 (the "Exchange Act") against the Company, Stefan Krause ("Krause"), Juergen Fitschen ("Fitschen"), Anshuman Jain ("Jain"), John Cryan ("Cryan"), and Marcus Schenck ("Schenck") (all defendants other than the Company collectively, the "Individual Defendants").[2]

Movant Damon Knauss ("Movant") lost approximately $74,204.35 as a result of the alleged fraud during the Class Period.  Movant respectfully submits his memorandum of law in support of his motion for (a) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and (b) for approval of his selection of Levi & Korsinsky LLP ("Levi & Korsinsky") as Lead Counsel.

Movant believes that he has the largest financial interest in the outcome of the case.[3]  As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff.  Moreover,

---

[1]     Two actions were consolidated in the Consolidated Action.  The two actions were entitled *Ranson v. Deutsche Bank Aktiengesellschaft, et al.,* No. 1:16-cv-03495-AT (the "*Ranson* Action") and *Ramanathan v. Deutsche Bank Aktiengesellschaft, et al..,* No. 1:16-cv-03539-AT (the "*Ramanathan* Action").

[2]     Specifically, plaintiffs in the Consolidated Action allege that all defendants violated Section 10(b) of the Exchange Act and rule 10b-5 promulgated under the Exchange Act, as well as Section 20(a) of the Exchange Act.

[3]     Damon Knauss' certification identifying his transactions in Deutsche Bank securities, as required by the PSLRA, as well as a chart identifying his losses are attached to the declaration of Adam M. Apton ("Apton Decl."), dated July 11, 2016 as Exhibits A and B, respectively.

Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[4]

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and have made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure.  *See In re Razorfish, Inc. Secs. Litig*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002).  Movant satisfies both requirements.

## STATEMENT OF FACTS

Deutsche Bank provides investment, financial, and related products and services worldwide. Compl. ¶ 7[5].  During the Class Period, the Complaint alleges that the Company failed to disclose that it had a serious and systematic failings in its controls against money laundering, aiding against international sanction, and committing financial crimes.  ¶ 26.

On April 15, 2013, the Company filed a Form 20-F for fiscal year 2012 ("2012 20-F") with the United States Securities and Exchange Commission ("SEC") providing the Company's financial results for the year and stating that the Company's internal controls over financial reporting and disclosure controls and procedures were effective.  ¶ 18.  The 2012 20-F was signed

---

[4]     The "Class" is comprised of all persons who purchased Deutsche Bank securities during the Class Period.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

[5]     Citations to "¶ __" are to paragraphs of the Complaint for Violation of the Federal Securities Laws (the "Complaint") filed in the *Ranson* Action.  The facts set forth in the Complaint are incorporated herein by reference.

by Fitschen, Jain, and Krause and contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), signed by them attesting to the accuracy of the Company's financial reporting.  *Id.* The 2012 20-F further stated that the Company abides by a "Code of Ethics."  ¶ 19.

On March 20, 2014, the Company filed its Form 20-F for the year 2013 with the SEC.  ¶ 20.  On March 20, 2015, the Company filed a Form 20-F for the year 2014 with the SEC.  ¶ 22. Each Form 20-F provided the Company's financial results for the year and stated that the Company's internal controls over financial reporting and disclosure controls and procedures were effective.  ¶¶ 20, 22.  Both Forms 20-F were also signed by Fitschen, Jain, and Krause and contained SOX certifications signed by them attesting to the Company's financial accuracy.  *Id*. Furthermore, each Form 20-F for 2013 and 2014 stated that the Company abides by a "Code of Ethics."  ¶¶ 21, 23.

On March 11, 2016, the Company filed a Form 20-F for the year 2015 ("2015 20-F") with the SEC providing the Company's financial results for the year and stating that the Company's internal controls over financial reporting and disclosure controls and procedures were effective. ¶ 24.  The 2015 20-F was signed by Cryan, Fitschen, and Schenckand contained SOX certifications by them attesting to the accuracy of financial reporting.  *Id.*  The 2015 20-F each stated that the Company abides by a "Code of Ethics."  ¶ 25.

The truth began to emerge on July 22, 2014 when *The Wall Street Journal* published an article, which stated that the Federal Reserve Bank of New York found that the Company suffered from a litany of serious financial-reporting problems that the Company has known for years and not fixed.  ¶ 27.  In a letter to the Company, a senior official with the New York Fed wrote, in part, that problems ranged from data-entry errors to not taking into account the value of collateral when assessing the riskiness of loans.  *Id*.  Upon this news, the Company's shares fell $1.05 per share,

3

approximately 3%, to close at $34.80 per share that same day.  ¶ 28.

On June 5, 2015, *Bloomberg* published an article stating that the Company conducted an internal investigation into possible money laundering by Russian clients which may involve about $6 billion of transactions over more than four years.  ¶ 29.  Upon this news, shares fell $0.71 per share to close at $30.63 per share that same day.  ¶ 30.

On August 3, 2015, *Bloomberg* published an article stating that the U.S. Department of Justice investigated billions of dollars of trades that the Company made on behalf of Russian clients.  ¶ 31.  Specifically, the Justice Department focused on mirror trades, which would have allowed Russian clients to move funds out of the country without properly alerting authorities and avoiding U.S sanction laws.  *Id.*  As a result, shares fell $1.00 per share, approximately 3%, to close at $34.02 per share the next day.  ¶ 32.

On September 18, 2015, *The Wall Street Journal* published an article stating that the Company would close its investment-banking operations in Russian amid investigations by regulators from Europe and the U.S. of potential money laundering by Russian clients.  ¶ 33.  As a result, shares fell $1.35 per share, approximately 5%, to close at $28.45 per share that same day.  ¶ 34.

On October 29, 2015, *Bloomberg* published an article stating its findings of the Company's violations of internal policies during its probe of the Russian mirror trades.  ¶ 35.  In addition the article stated, the Company set aside $1.3 billion to cover suspected wrongdoing at its Russian equity unit.  ¶ 35.  On this news, shares fell $2.42 per share, approximately 8%, to close at $27.89 that same day.  ¶ 36.

On April 14, 2016, *Bloomberg* published an article stating that the Company found a "systemic" failure in its internal controls, which were designed to prevent money laundering and

financial crime and allowed a suspected money-laundering pattern to pump out as much as $10 billion out of Russia from 2012 through 2014. ¶ 37. By April 28, 2016, *Bloomberg* published another article disclosing the resignation of Georg Thoma, Chairman of the Supervisory Board of Integrity Committee, who was brought on the Board to help improve controls and work through the Company's various cases of misconduct.  ¶ 38.  Upon this news, shares fell $0.50 per share, approximately 3%, to close at $18.96 per share the next day.  ¶ 39.

On May 1, 2016, *The Financial Times* published an article revealing that the United Kingdom's Financial Conduct Authority ("FCA") sent a letter to the Company on March 2, 2015, accusing it of having serious and systemic failings in its controls against financing terrorism, money laundering, aiding against international sanctions, and committing financial crimes.  ¶ 40. Furthermore, the FCA stated that its investigation unearthed incomplete documentations and lack of monitoring.  *Id.*

Finally, On May 1, 2016, Bloomberg published an article stating that the FCA faulted the Company for serious lapses in efforts to thwart money laundering, as well as criticized the Company's ability to verify some clients' goals, or ensure that it wasn't aiding organizations subject to international sanctions.  ¶ 41.  Upon this news, shares fell $1.62 per share, approximately 9%, to close at $17.34 per share on May 3, 2016.  ¶ 42.

<u>**ARGUMENT**</u>

I.  <u>**THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF**</u>

A.      **The Procedure Required by the PSLRA**

Once the Court decides the consolidation motion, the PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §

78u-4(a).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A).  The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff.  15 U.S.C. §§ 78u-(a)(3)(A)(i)(II)  and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)  has either filed the complaint or made a motion in response to a notice;
>
> (bb)  in the determination of the court, have the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against him.  Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Actions.

### 1.   Movant Is Willing to Serve as Class Representative

On May 10, 2016, counsel in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Deutsche Bank and which advised putative class members that they had sixty days from the filing of the Notice to file a motion to seek appointment as a lead plaintiff in the action.[6]  Movant has reviewed a complaint filed in the pending Actions and has timely filed his motion pursuant to the Notice.

### 2.   Movant has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action.   As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class.  *See* Apton Decl., Ex. B.  The movant or movants with the largest financial interest and who meets the requirements of typicality and adequacy under Rule 23 is presumptively the lead plaintiff.  *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001).

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period.  15 U.S.C. § 78u-4(e).

---

[6]      The *Ranson* Action was filed in this Court on May 10, 2016.  On that same day, the Notice was published over *Businessswire,* a widely circulated national business-oriented wire service. *See* Apton Decl. Exhibit C.

During the Class Period, Movant purchased Deutsche Bank securities in reliance upon the materially false and misleading statements issued by defendants, and was injured thereby.  Movant suffered a substantial loss of $74,204.35.  *See* Apton Decl., Exhibit B.  Movant thus has a significant financial interest in the outcome of this case.  To the best of his knowledge, there are no other applicant who has sought, or is seeking, appointment as lead plaintiff that has a larger financial interest and also satisfies Rule 23.

**B.     Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

With respect to the qualifications of a class representative, Rule 23(a) requires generally that representatives' claims be typical of those of the class, and that representatives will fairly and adequately protect the interests of the class.  *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman v. Lumenis, Ltd.,* No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *5-6 (S.D.N.Y June 18, 2003); *Weltz,* 199 F.R.D. at 133 (considering only typicality and adequacy on a motion as lead plaintiff); *see also In Party City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999).  *See generally* Fed. R. Civ. P. 23(a)(3)-(4).  Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage.  *Weinberg,* 216 F.R.D.

at 252.  Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  *See id.; Weltz,* 199 F.R.D. at 133; *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

 As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

### 1.  Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class."  Movant plainly meets the typicality requirement of Rule 23 because (i) he suffered the same injuries as the absent class members; (ii) he suffered as a result of the same course of conduct by defendants; and (iii) his claims are based on the same legal issues.  *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise"); *see also Milestone Scientific,* 183 F.R.D. at 414-415.  Rule 23 does not require that the named plaintiff be identically situated with all class members.  It is enough if their situations share a common issue of law or fact.  *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984).  A finding of commonality frequently supports a finding of typicality.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members.  Movant, like the other members of the Class, acquired Deutsche Bank securities during the Class Period at prices

artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby.  Thus, his claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and his losses result from Defendants' common course of wrongful conduct.  Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3).  *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### 2.   Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B); *see Drexel Burnham*, 960 F.2d at 291; *Weltz,* 199 F.R.D. at 133.

Movant's interests are clearly aligned with those of the other members of the Class.  Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Actions.  This motivation, combined with Movant's identical interests with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class.  In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing

necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, he is, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Actions.

## II.    <u>MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED</u>

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class.  The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one, and are well-qualified to represent the Class.  *See* Apton Decl. Ex. E (the firm resume of Levi & Korsinsky).

## <u>CONCLUSION</u>

For the foregoing reasons, Movant respectfully requests that this Court: (1) appoint Movant as Lead Plaintiff for the Class in the Action; and (3) approve Levi & Korsinsky as Lead Counsel for the Class.

Dated:  July 11, 2016                                Respectfully submitted,


**LEVI & KORSINSKY LLP**

/s/ Adam M. Apton_____
Nicholas I. Porritt
Adam M. Apton
30 Broad Street
24th Floor

11

New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: aapton@zlk.com

*Counsel for Movant-Proposed Lead Plaintiff*
*Damon Knauss*