**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: DEUTSCHE BANK AKTIENGESELLSCHAFT SECURITIES LITIGATION | **No. 1:16-cv-03495**<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**DEUTSCHE BANK INVESTOR GROUP'S MOTION FOR APPOINTMENT**
**AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ...................................................................................................................... 6

I.      THE DEUTSCHE BANK INVESTOR GROUP SHOULD BE APPOINTED
        LEAD PLAINTIFF ................................................................................................. 6

        A.      The PSLRA Standard For Appointing Lead Plaintiff ................................ 6

        B.      The Deutsche Bank Investor Group Is The "Most Adequate Plaintiff" ................ 7

                1.      The Deutsche Bank Investor Group' Motion is Timely ............................. 7

                2.      The Deutsche Bank Investor Group Has the Largest Financial
                        Interest in the Relief Sought by the Class ................................ 8

                3.      The Deutsche Bank Investor Group Satisfies the Requirements of
                        Rule 23 ................................................................................. 8

                        a.      The Deutsche Bank Investor Group Satisfies the Typicality
                                Requirement of Rule 23 ................................................ 9

                        b.      The Deutsche Bank Investor Group Satisfies the Adequacy
                                Requirement of Rule 23 ................................................ 10

II.     THE COURT SHOULD APPROVE LEAD PLAINTIFF'S SELECTION OF
        COUNSEL ............................................................................................................ 12

CONCLUSION .................................................................................................................. 13

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................11, 12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)...............................................................8, 12, 13

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*
  269 F.R.D. 291 (S.D.N.Y. 2010) ..........................................................9

*Faig v. Bioscrip, Inc.*,
  No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013).....................7, 8, 10

*Georgine v. Amchem Prods., Inc.*,
  83 F.3d 610 (3d Cir. 1996).................................................................10, 11

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
  No. 15-CV-3599 (KMW), 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015).........................9,10

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 112 (S.D.N.Y. 2010) ..........................................................9

*Lipetz v. Wachovia Corp.*,
  No. 08 Civ. 6171 (RJS), 2008 WL 4615895 (S.D.N.Y. Oct. 10, 2008) ................10

*In re McDermott Int'l., Inc. Sec. Litig.*,
  No. 08 Civ. 9943 (DC), 2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) ....................11

*In re Molycorp, Inc. Sec. Litig.*,
  No. 12-cv-0292-WJM-KMT, 2012 U.S. Dist. LEXIS 89191
  (D. Colo. May 29, 2012)...................................................................11

*Reimer v. Ambac Fin. Group, Inc.*,
  No. 08 Civ. 411 (MRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ................12

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  No. 08-397 (DMC) (JAD), 2013 WL 5505744 (D.N.J. Oct. 1, 2013)...................11

*Sgalambo v. McKenzie*,
  268 F.R.D. 170 (S.D.N.Y. 2010) ..........................................................9

*Teran v. Subaye, Inc.*,
  No. 11 Civ. 2614 (NRB), 2011 WL 4357362 (S.D.N.Y. Sept. 16, 2011) ...............9

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................................. *passim*

15 U.S.C. § 78u-4(a) *et seq.* ................................................................................. *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
  No. 04-cv-8141 (S.D.N.Y.) .............................................................................. 13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.,*
  No. 08-md-1963 (S.D.N.Y.) ............................................................................. 13

*In re Satyam Comput. Servs. Ltd. Sec. Litig.,*
  No. 09-md-2027 (S.D.N.Y.) ............................................................................. 13

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ............................... 13

Mr. Essam Hamouda ("Hamouda"), Mr. Brad Bjorklund ("Bjorklund"), and Ms. Barbara Priscus ("Priscus" and with Hamouda and Bjorklund, the "Deutsche Bank Investor Group") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in support of their motion for the entry of an Order:  (1) appointing the Deutsche Bank Investor Group as Lead Plaintiff for the Class (as defined herein) of all persons or entities who purchased or otherwise acquired the securities of Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or the "Company") between April 15, 2013 and April 29, 2016, inclusive (the "Class Period"); and (2) approving the Deutsche Bank Investor Group's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Deutsche Bank Investor Group respectfully submits that it should be appointed Lead Plaintiff on behalf of all of those who purchased or otherwise acquired Deutsche Bank securities during the Class Period (the "Class").  The above-captioned action, brought against Deutsche Bank, a provider of investment, financial, and related products and services, and certain of its officers and/or directors (collectively, "Defendants"), alleges violations of Sections 10(b) and 20(a) of the Exchange Act, and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant or movants have the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movants have made a *prima facie* showing that they are

1

otherwise typical and adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Deutsche Bank Investor Group incurred a loss of more than **$98,481** on its Class Period investments in Deutsche Bank securities as calculated on a last-in-first-out ("LIFO") basis.[1]  Accordingly, the Deutsche Bank Investor Group has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' alleged violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

The Deutsche Bank Investor Group also meets the typicality and adequacy requirements of Rule 23 because its claims are typical of those of absent Class members, and because they will fairly and adequately represent the interests of the Class.  Indeed, the Deutsche Bank Investor Group has demonstrated its ability to effectively oversee this litigation and its commitment to working cohesively to prosecute the action by conferring prior to filing this motion in order to establish a coordinated strategy for prosecuting the litigation, including overseeing proposed Lead Counsel.  *See* Joint Declaration of Essam Hamouda, Brad Bjorklund, and Barbara Priscus in Support of the Motion of the Deutsche Bank Investor Group for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Joint Declaration" or "Jt. Decl."), ¶¶ 7-10, Stocker Decl. Ex. C.  Accordingly, the Deutsche Bank Investor Group is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

---

[1]  Copies of the Certifications of the Deutsche Bank Investor Group are attached as Exhibit A to the Declaration of Michael W. Stocker (the "Stocker Declaration"), filed contemporaneously herewith.  These Certifications set forth all transactions of the Deutsche Bank Investor Group in Deutsche Bank securities during the Class Period.  In addition, tables reflecting the calculation of financial losses sustained by the Deutsche Bank Investor Group on its investments in Deutsche Bank securities during the Class Period are attached as Exhibit B to the Stocker Declaration.

Finally, pursuant to the PSLRA, the Deutsche Bank Investor Group respectfully requests that the Court approve its selection of Labaton Sucharow as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Labaton Sucharow is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.

Accordingly, the Deutsche Bank Investor Group respectfully requests that the Court appoint the Deutsche Bank Investor Group as Lead Plaintiff for the Class and approve its selection of Counsel.

## FACTUAL BACKGROUND

The Action alleges that, during the Class Period, Deutsche Bank, which provides investment, financial, and related products and services worldwide, filed periodic financial statements with the SEC that set forth the Company's claimed operations and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective. According to the complaint, these statements were false and/or misleading and/or failed to disclose that: (1) Deutsche Bank had serious and systemic failings in its controls against financing terrorism, money laundering, aiding against international sanctions, and committing financial crimes; (2) Deutsche Bank's internal control over financial reporting and its disclosure controls and procedures were not effective; and (3) as a result, Deutsche Bank's public statements were materially false and misleading at all relevant times.

The truth was revealed through several disclosures, beginning on July 22, 2014 when *The Wall Street Journal* reported that the Federal Reserve Bank of New York found that the Company's U.S. operations suffer from a litany of serious financial-reporting problems that the Company had known about for years but not fixed. On this news, shares of Deutsche Bank fell

3

$1.05 per share or approximately 3% from its previous closing price to close at $34.80 per share on July 22, 2014.

On June 5, 2015, news outlet, *Bloomberg*, reported that the Company was conducting an internal probe into possible money laundering by Russian clients that involved about $6 billion of transactions over more than four years.  On this news, shares of Deutsche Bank fell $0.71 per share from its previous closing price to close at $30.63 per share on June 5, 2015.

On August 3, 2015, *Bloomberg* reported that the U.S. Department of Justice was investigating billions of dollars of trades the Company made on behalf of Russian clients.  On this news, shares of Deutsche Bank fell $1.00 per share or approximately 3% over the next two trading days to close at $34.02 per share on August 4, 2015.

On September 18, 2015, *The Wall Street Journal* reported that the Company was closing its investment-banking operations in Russia amid investigations by regulators from Europe and the U.S. of potential money laundering by the Company's Russian clients and the probing of the adequacy of the Company's compliance systems.  On this news, shares of Deutsche Bank fell $1.35 per share or approximately 5% from its previous closing price to close at $28.45 per share on September 18, 2015.

On October 29, 2015, *Bloomberg* reported that the Company set aside $1.3 billion in the third quarter to cover suspected wrongdoing at its Russian equity unit, and that it found violations of internal policies and identified weaknesses in its oversight regime during its probe of the so-called Russian mirror trades.  On this news, shares of Deutsche Bank fell $2.42 per share or approximately 8% from its previous closing price to close at $27.89 per share on October 29, 2015.

On April 14, 2016, *Bloomberg* reported that the Company found a "systemic" failure in its internal controls that were designed to prevent money laundering and financial crime, and which allowed a "suspected money-laundering pattern" to pump as much as $10 billion out of Russia from 2012 through 2014.

On April 28, 2016 during aftermarket hours, *Bloomberg* reported that Georg Thoma, Chairman of the Supervisory Board of Integrity Committee, who was brought on the Board to help improve controls and work through the Company's various cases of misconduct, resigned as Chairman of the Committee effective immediately.  On this news, shares of Deutsche Bank fell $0.50 per share or approximately 3% from its previous closing price to close at $18.96 per share on April 29, 2016.

The truth regarding Deutsche Bank's misconduct was fully revealed on May 1, 2016 when *The Financial Times* reported that the United Kingdom's Financial Conduct Authority ("FCA") sent a letter to Deutsche Bank on March 2, 2015, accusing it of having "serious" and "systemic" failings in its controls against financing terrorism, money laundering, aiding against international sanctions, and committing financial crimes.  The FCA stated that its investigation uncovered, among other things, incomplete documentations, lack of monitoring, and influencing staff to take actions related to specific clients, which all amounted to a "serious" and "systemic" controls failure.  On the same day, *Bloomberg* reported that the FCA faulted the Company for "serious" lapses in efforts to thwart money laundering and criticized the Company's ability to verify client's abilities and goals, or ensure that it wasn't aiding organizations subject to international sanctions.  On this news, shares of Deutsche Bank fell $1.62 per share or approximately 9% over the next two trading days to close at $17.34 per share on May 3, 2016.

Defendants' violations of the securities laws and the revelations thereof have caused

Deutsche Bank investors to incur significant losses.

## ARGUMENT

**I.    THE DEUTSCHE BANK INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

The Deutsche Bank Investor Group respectfully submits that it should be appointed Lead

Plaintiff because it timely filed the instant motion, believes it has the largest financial interest of

any qualified movant, and satisfies the typicality and adequacy requirements of Rule 23.

### A.    The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA provides a straightforward procedure for selecting a lead plaintiff for "each

private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant

to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-

4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).  First, Section 21D(a)(3)(A)(i) of

the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is
> filed, the plaintiff or plaintiffs shall cause to be published, in a
> widely circulated national business-oriented publication or wire
> service, a notice advising members of the purported plaintiff class–
>
> (I)      of the pendency of the action, the claims asserted therein,
> and the purported class period; and
>
> (II)     that, not later than 60 days after the date on which the
> notice is published, any member of the purported class may move
> the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members

to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-

4(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the

"most adequate plaintiff" is the person or "group of persons" who:  (1) filed a complaint or made

a motion to serve as lead plaintiff; (2) have the largest financial interest in the relief sought by

the class; and (3) otherwise satisfy the requirements of Rule 23.  *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I); *Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *2

(S.D.N.Y. Dec. 19, 2013).  This presumption may be rebutted only by "proof" that the

presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the

class" or "is subject to unique defenses that render such plaintiff incapable of adequately

representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Faig*, 2013 WL 6705045, at *2.

**B.      The Deutsche Bank Investor Group Is The "Most Adequate Plaintiff"**

The Deutsche Bank Investor Group respectfully submits that it is presumptively the

"most adequate plaintiff" because it has complied with the PSLRA's procedural requirements,

possess the largest financial interest of any qualified movant, and satisfies Rule 23's typicality

and adequacy requirements.

**1.      The Deutsche Bank Investor Group' Motion is Timely**

The Deutsche Bank Investor Group filed this Motion to serve as Lead Plaintiff in a timely

manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the first-filed action published

a notice on *Businesswire* – a widely circulated national business-oriented wire service – on May

10, 2016, the day that the initial complaint was filed.  *See* Stocker Decl., Ex. D.  The May 10,

2016 notice, in accordance with the PSLRA, indicated that applications for lead plaintiff must be

made no later than 60 days from the date on which the notice was published; *i.e.*, July 11, 2016.

The Deutsche Bank Investor Group filed its motion seeking appointment as Lead Plaintiff within

this deadline and thus satisfied the procedural requirements of the PSLRA.

      **2.**      **The Deutsche Bank Investor Group Has the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Deutsche Bank Investor Group incurred a substantial loss of **$98,481** on its transactions in Deutsche Bank securities on a LIFO basis during the Class Period.  *See* Loss Analysis, Stocker Decl. Ex. B.  The Deutsche Bank Investor Group is unaware of any other movant with a larger financial interest in the outcome of the action.  Accordingly, the Deutsche Bank Investor Group has the largest financial interest of any qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *Faig*, 2013 WL 6705045, at *2 (holding the movant with the greatest loss to be the presumptive "most adequate plaintiff").

      **3.**      **The Deutsche Bank Investor Group Satisfies the Requirements of Rule 23**

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

For the purposes of assessing whether the provisions of Rule 23 are satisfied, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.* 269 F.R.D. 291, 296 (S.D.N.Y. 2010) (citation omitted).  At the lead plaintiff stage of the litigation, a movant need only make "a preliminary showing that the adequacy and typicality requirements have been met." *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010).

### a.      The Deutsche Bank Investor Group Satisfies the Typicality Requirement of Rule 23

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Sgalambo v. McKenzie,* 268 F.R.D. 170, 173-74 (S.D.N.Y. 2010) (internal quotation marks omitted) (citation omitted).

The typicality requirement is satisfied here because the Deutsche Bank Investor Group—which is not subject to any unique or special defenses—seeks the same relief and advances the same legal theories as do other Class members.  As did all members of the Class, the Deutsche Bank Investor Group acquired Deutsche Bank securities in reliance on the Company's public statements, which contained materially false or misleading statements or omissions, and was damaged thereby.  *See Teran v. Subaye, Inc.*, No. 11 Civ. 2614 (NRB), 2011 WL 4357362, at *5 (S.D.N.Y. Sept. 16, 2011) (finding typicality where movant purchased shares at artificially inflated prices and was damaged thereby).  These shared claims, which are based on the same legal theories and arise from the same events and course of conduct as the claims of other Class members, satisfy Rule 23(a)(3)'s typicality requirement.  *See e.g., Int'l Union of Operating*

9

*Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599 (KMW), 2015 WL 7018024, at *5 (S.D.N.Y. Nov. 12, 2015) (finding typicality where movant's claims were based on the same legal theory and arise from the same events and course of conduct as the Class's claims).

### b.    The Deutsche Bank Investor Group Satisfies the Adequacy Requirement of Rule 23

The Deutsche Bank Investor Group likewise satisfies the adequacy requirement of Rule 23.  "The adequacy requirement is satisfied if the movant shows that '(1) class counsel is qualified, experienced, and general [sic] able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'"  *Faig*, 2013 WL 6705045, at *3 (citation omitted).

The Deutsche Bank Investor Group's interests are perfectly aligned with the other members of the Class and are not antagonistic in any way.  Indeed, the Deutsche Bank Investor Group has the same interest as all members of the Class:  to maximize the recovery for the Class. There are no facts that indicate any conflicts of interest between the Deutsche Bank Investor Group and the other Class members.  Moreover, because of the Deutsche Bank Investor Group's substantial financial stake in the litigation, Class members can be assured that they have the incentive to vigorously represent the Class' interests.  *See Lipetz v. Wachovia Corp.*, No. 08 Civ. 6171 (RJS), 2008 WL 4615895, at *3 (S.D.N.Y. Oct. 10, 2008) (noting investor's "substantial financial stake in the litigation" suggests that it would vigorously prosecute claims on behalf of the class).  The Deutsche Bank Investor Group has further demonstrated its adequacy through the selection of Labaton Sucharow to serve as Lead Counsel on behalf of the Class.  *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996) (stating that the adequacy of

representation inquiry involves consideration of both whether "the interests of the named

plaintiffs [are] sufficiently aligned with those of the absentees" and whether "class counsel [is]

qualified and [will] serve the interests of the *entire* class") (citation omitted).  As discussed more

fully below, Labaton Sucharow is highly qualified and experienced in the area of securities class

action litigation and has repeatedly demonstrated its ability to prosecute securities class action

lawsuits.

Moreover, the language of the PSLRA expressly permits the appointment of more than

one class member to serve as Lead Plaintiff, as courts in this District have recognized.  *See, e.g.*,

*In re McDermott Int'l., Inc. Sec. Litig.*, No. 08 Civ. 9943 (DC), 2009 WL 579502, at *2

(S.D.N.Y. Mar. 6, 2009) ("The majority of courts, including those in this District . . ., permit []

investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such

a grouping would best serve the class.") (citation omitted).  This practice is in accord with the

majority view throughout the country.  *See e.g.*, *In re Schering-Plough Corp. Enhance Sec.*

*Litig.*, No. 08-397 (DMC) (JAD), 2013 WL 5505744, at *48 (D.N.J. Oct. 1, 2013) (appointing

four-member group); *In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-0292-WJM-KMT, 2012 U.S.

Dist. LEXIS 89191, at *9 (D. Colo. May 29, 2012) ("A small, cohesive group can best represent

the interests of the absent class members in the event that a Lead Plaintiff later withdraws, or if

defendants successfully challenge one of the group during the pendency of the litigation").

The Deutsche Bank Investor Group has already demonstrated its commitment to working

cohesively in the efficient prosecution of the action, as reflected by the Joint Declaration

executed following a joint telephonic conference.  *See* Stocker Decl., Ex. C; *see also In re Bank*

*of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing

group and noting "declarations demonstrating cooperative efforts among" the group's members);

*Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (MRB), 2008 WL 2073931, at *3 (S.D.N.Y.

May 9, 2008) (finding that "joint conference calls" regarding litigation strategy demonstrated the

group was able to function independently of counsel).

Specifically, the Joint Declaration establishes, *inter alia*, that:

- Based on their respective financial losses, to gain the advantages of joint decision-making and to provide the class broad representation, Hamouda, Bjorklund, and Priscus affirmatively decided to seek joint appointment as lead plaintiff (Stocker Decl., Ex. C, ¶¶ 2-5);

- Hamouda, Bjorklund, and Priscus personally discussed seeking appointment in this case before filing a motion (*Id.*, ¶¶ 2-4);

- Hamouda, Bjorklund, and Priscus have explicitly acknowledged and accepted their duties and obligations to all Class members if selected as Lead Plaintiff and are committed to seeking the largest possible recovery for the class (*Id.*, ¶¶ 2-4, 6, 15);

- Hamouda, Bjorklund, and Priscus are committed to overseeing counsel to ensure that the case is efficiently litigated in the class's best interest and have directed counsel to establish minimum reporting protocols to ensure their proper oversight of counsel (*Id.*, ¶¶ 6, 8-10, 12); and

- Hamouda, Bjorklund, and Priscus are committed to collaboratively working together to manage this litigation on behalf of the proposed class (*Id.*, ¶¶ 7-9)).

Because the Deutsche Bank Investor Group is a small, cohesive group of investors with

the capacity and resources to reach consensus decisions, its financial interests are properly

aggregated for purposes of this motion.  Accordingly, the Deutsche Bank Investor Group is the

presumptive Lead Plaintiff.

## II.    THE COURT SHOULD APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select lead counsel, subject to the

approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant Corp.*, 264 F.3d at 276 (stating

that "the Reform Act evidences a strong presumption in favor of approving a properly-selected

lead plaintiff's decisions as to counsel selection and counsel retention").  Consistent with

Congressional intent, a court should not disturb the lead plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class." *See* Statement of Managers – The Private Securities Litigation Reform Act of 1995, H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, the Deutsche Bank Investor Group has selected Labaton Sucharow as Lead Counsel for the Class. Labaton Sucharow has excelled as lead counsel in numerous landmark securities class actions on behalf of defrauded investors. Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-2027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members. Labaton Sucharow presently serves as lead or co-lead counsel in securities class actions against Goldman Sachs Group, Inc. and Facebook, Inc. among other significant investor class actions currently pending. *See* Labaton Sucharow Firm Resume, Stocker Decl., Ex. E.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, the Deutsche Bank Investor Group respectfully requests that the Court: (i) appoint the Deutsche Bank Investor Group as Lead Plaintiff for the Class pursuant to the PSLRA; and (ii) approve its selection of Labaton Sucharow as Lead Counsel for the Class.

13

DATED:  July 11, 2016                    Respectfully submitted,

                                         /s/ Michael W. Stocker_____
                                         Christopher J. Keller
                                         Michael W. Stocker
                                         Seth M. Jessee
                                         **LABATON SUCHAROW LLP**
                                         140 Broadway
                                         New York, New York 10005
                                         Telephone: (212) 907-0700
                                         Facsimile:  (212) 818-0477
                                         ckeller@labaton.com
                                         mstocker@labaton.com
                                         sjessee@labaton.com

                                         *Counsel for the Deutsche Bank Investor Group and*
                                         *Proposed Lead Counsel for the Class*

14