USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/4/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE DEUTSCHE BANK
AKTIENGESELLSCHAFT SECURITIES
LITIGATION

16-CV-03495 (AT) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Before the Court is a motion filed on July 11, 2016 by Andrei Sfiraiala, pursuant to section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (PSLRA), for appointment as lead plaintiff in this securities class action. (Dkt. No. 28.) Sfiraiala also seeks appointment of his chosen counsel, Pomerantz LLP, as lead counsel. Four competing motions, filed on the same day, were brought by (1) James Ranson (Dkt. No. 20); (2) Damon Knauss (Dkt. No. 22); (3) a group calling itself the "Deutsche Bank Investor Group," consisting of Essam Hamouda, Brad Bjorklund, and Barbara Priscus (Dkt. No. 25); and (4) the Chester County Employees Retirement Fund (Chester County) (Dkt. No. 31), but all four movants or movant groups have since withdrawn their motions or otherwise indicated that they do not oppose appointment of Sfiraiala as lead plaintiff. *See* Ranson Notice of Withdrawal of Motion (Dkt. No. 45); Knauss Notice of Non-Opposition (Dkt. No. 42); Deutsche Bank Investor Group Notice of Non-Opposition (Dkt. No. 41); Chester County Notice of Non-Opposition (Dkt. No. 44).

For the following reason, movant Sfiraiala's motion is GRANTED.

## BACKGROUND

Plaintiff Ranson commenced this action on May 10, 2016, by filing a complaint (Dkt. No. 1) against Deutsche Bank Aktiengesellschaft (DBA) and DBA officers Stefan Krause, Juergen

Fitschen, Anshuman Jain, John Cryan, and Marcus Schenk. The complaint was brought on behalf of a putative class of investors who purchased or otherwise acquired DBA securities traded on the New York Stock Exchange between April 15, 2013 and April 29, 2016 (the Class Period) and were damaged after corrective disclosures caused a drop in share price from $35.85 to $17.34 by the beginning of May 2016. *Id.* ¶¶ 28, 42-44. The Complaint alleges that defendants made materially false and misleading statements in their 2013 through 2015 Form 20-F filings with the United States Securities and Exchange Commission (SEC), which failed to disclose financial reporting problems in DBA's United States office, as well as failures in DBA's offices in Russia and the United Kingdom with respect to compliance and anti-money laundering controls, all in violation of Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. Compl. ¶¶ 2, 18-26.[1]

In accordance with the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i), notice of the pendency of this action was published through *Business Wire* on May 10, 2016. *See* Decl. of Jeremy A. Lieberman in Support of Motion to Appoint Sfiraiala Ex. 1 (Dkt. No. 30-1), at 1. The notice set a deadline of July 11, 2016 for motions for appointment as lead plaintiff. *See id.* In an order issued on June 21, 2016 (Dkt. No. 41), Judge Torres affirmed this deadline and ordered that opposition to any motions for appointment be filed no later than July 25, 2016, and replies be filed no later than August 1, 2016.

---

[1] On May 12, 2016, plaintiff Warren Ramanathan filed his own complaint against the same defendants, on behalf of the same putative class and making the same allegations, in a related action entitled *Ramanathan v. Deutsche Bank Aktiengesellschaft*, No. 16 Civ. 3539 (S.D.N.Y. May 12, 2016). On June 21, 2016, the Hon. Analisa Torres, United States District Judge, consolidated the two cases.

On July 11, 2016, Sfiraiala, Ranson, Knauss, Chester County, and the Deutsche Bank Investor Group each moved for appointment as lead plaintiff. The Deutsche Bank Investor Group claimed aggregate losses of $98,481 on a total of 15,577 shares purchased during the Class Period, using the "Last-In-First-Out" (LIFO) method of calculation for 12,963 shares that were then sold during the Class Period,[2] and using an estimated price of $16.0388 per share to calculate the value of the 7,164 shares that the group retained at the end of the Class Period. *See* Deutsch Bank Investor Group Mem. of Law (Dkt. No. 26), at 2, 12; Decl. of Michael W. Stocker, Ex. B (Dkt. No. 27-2). Ranson claimed losses of $833.58 on a total of 54 shares purchased during the Class Period—all of which Ranson retained—based on an estimated price of $16.2041 per share at the end of the Class Period. *See* Ranson Mem. of Law (Dkt. No. 21), at 4; *id.* Ex. 3 (Dkt. No. 21-3). Knauss purchased a total of 3,550 shares during the Class Period, all of which he retained, and claimed losses of $74,204.35 on based on an estimated ending price of $16.1467 per share. *See* Knauss Mem. of Law (Dkt. No. 23), at 8; Decl. of Adam Apton, Ex. B (Dkt. No. 24-2). Sfiraiala purchased a total of 19,527 shares and claimed losses of "approximately $262,921 calculated on a FIFO basis and $246,270 calculated on a LIFO basis," using an estimated ending price of $16.1467 per share for the 11,500 shares retained at the end of the Class Period. *See* Sfiraiala Mem. of Law (Dkt. No. 29), at 5, 9; *accord* Lieberman Decl. Ex.

---

[2] To calculate approximate losses in PSLRA cases, "courts 'typically employ one of two methodologies: First-In-First-Out (FIFO) or Last-In-First-Out (LIFO).'" *Hom v. Vale, S.A.*, 2016 WL 880201, at *3 (S.D.N.Y. Mar. 7, 2016) (quoting *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012)). Under the FIFO method, stocks acquired first are assumed to have been sold first in the calculation of losses; under the LIFO method, stocks acquired most recently are assumed to have been the first sold. *See Hom*, 2016 WL 880201, at *3. "Courts in this district have stated 'a very strong preference for the LIFO method in calculating loss.'" *Id.* (quoting *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011)). "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due the inflation of the stock price. FIFO may exaggerate losses." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp.*,

C (Dkt. No. 30-3). Chester County claimed losses of approximately $47,097 on 3,751 shares purchased during the Class Period (the losses are the same whether the LIFO or FIFO methods are used, as all sales took place on the same date, after all shares had been purchased), using an estimated price of $16.137 per share for the 1,876 shares it retained. *See* Chester County Mem. of Law (Dkt. No. 32), at 5; Decl. of David Rosenfeld, Ex. C (Dkt. No. 33-3).

On July 19, 2016 DBA filed its response to the motions, taking no position on the Court's appointment of lead plaintiff or selection of counsel, but objecting to evidence preservation provisions contained in the proposed orders which Knauss and Sfiraiala submitted with their motions. *See* DBA Response to Motions to Appoint Lead Plaintiff (Dkt. No. 40), at 1-3.

Knauss and the Deutsch Bank Investor Group both filed notices of non-opposition on July 25, 2016, each acknowledging that it did not possess the largest financial interest in relief sought by the class. *See* Deutsche Bank Investor Group Notice of Non-Opposition, at 2; Knauss Notice of Non-Opposition, at 1. Chester County did the same on July 27, 2016. *See* Chester County Notice of Non-Opposition, at 1. Ranson withdrew his motion on July 27. *See* Ranson Notice of Withdrawal of Motion, at 1. Sfiraiala filed a response in support of his own motion on July 25 (Dkt. No. 43), and a notice of non-opposition to his own motion on August 2, 2016 (Dkt. No. 46), noting that his motion was now unopposed.

## DISCUSSION

### I. Appointment of Lead Plaintiff and Counsel

#### A. PSLRA Notice and Filing Requirements

Congress enacted the PSLRA in 1995 with the goal of preventing various perceived abuses in securities fraud class actions, including "lawyer-driven" litigation. *Pirelli Armstrong*

---

*Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) (ellipses omitted) (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005)).

*Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-03 (S.D.N.Y. 2004) (citing S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-69 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730). The PSLRA amended the Securities Exchange Act to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998)). "In other words, by enacting the PSLRA, Congress sought to encourage class members with the largest purported losses to act as lead plaintiffs in private securities litigation." *Barnet v. Elan Corp.*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005) (citing H.R. Conf. Rep. No. 104-369).

To that end, the PSLRA "provides for extensive judicial involvement in the process of selecting a lead plaintiff and lead counsel in a securities class action." *Peters v. Jinkosolar Holding Co.*, 2012 WL 946875, at *4-5 (S.D.N.Y. Mar. 19, 2012). As a first step, within twenty days of filing the complaint, the plaintiff must publish "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" of the pendency of the action, the claims asserted, the purported class period, and their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within sixty days of publication of the notice, any member or members may apply to the court to be appointed as lead plaintiff(s). *Id.*

Ranson's counsel published notice of this lawsuit in *Business Wire* on May 10, 2016, under the title "EQUITY ALERT: Rosen Law Firm Files Securities Class Action Lawsuit Against Deutsche Bank AG - DB." *See* Lieberman Decl. Ex. 1, at 1. The notice informed

5

potential class members of the Class Period, the claims asserted in the action, and their right to file a motion for appointment as lead counsel no later than July 11, 2016. *See id.* The notice also directed potential class members to contact the Rosen Law Firm, Ranson's counsel, for more information or to join the litigation. *See id*. This notice satisfies the requirements of § 78u-4(a)(3)(A)(i). *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 32 (S.D.N.Y. 2012) (characterizing *Business Wire* as "a widely-circulated, national, business-orientated news reporting wire service" and accepting publication therein for purposes of satisfying the SPLRA's notice requirement).

## B. Most Adequate Plaintiff

The PSLRA next directs courts to appoint as lead plaintiff the member of the purported class who is "most capable of adequately representing the interests of class members"—referred to in the statute as the "most adequate plaintiff"—"[a]s soon as practicable" after resolving the issue of consolidation. § 78u-4(a)(3)(B).

The statute creates a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that (1) "has either filed the complaint or made a motion" for appointment as lead counsel; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff": (1) "will not fairly and adequately protect the interest of the class"; or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 78u-4(a)(3)(B)(iii)(II).

6

The method of determining the "largest financial interest in the relief sought by the class" is not specified in the PSLRA, but courts in this District generally make the determination using the following four factors:

(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.

*Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (citing *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust*, 229 F.R.D. at 404). It is "well settled" that the fourth factor—approximate losses suffered—is "the most important element of the test." *Peters*, 2012 WL 946875, at *5 (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)).

Sfiraiala satisfied the first requirement by moving for appointment as lead counsel. Moreover, based on the loss calculations submitted by the various movants in connection with their respective motions, it is clear—as acknowledged by all movants in their later submissions—that Sfiraiala has the largest financial interest in the litigation, and therefore satisfies the second requirement. Sfiraiala purchased a total of 19,527 shares of DBA during the Class Period, which was more than any other movant purchased. *See* Lieberman Decl., Ex. C. Of those, Sfiraiala retained 11,000 net shares (the difference between the number of shares purchased and sold during the class period), *see id.*, which is more than any other movant retained. In addition, the net funds expended by Sfiraiala—$423,883—are greater than the net

7

funds expended by any other movant. *See id.*[3] Finally, Sfiraiala's approximate losses were greater than the losses of any other movant.[4]

Sfiraiala therefore has the largest financial interest in this action. Moreover, no party or defendant suggests that Sfiraiala "will not fairly and adequately protect the interest of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 78u-4(a)(3)(B)(iii)(II).

## C. Rule 23 Requirements

Sfiraiala must still meet the third requirement—"satisf[ying] the requirements of Rule 23 of the Federal Rules of Civil Procedure"—in order to be entitled to the rebuttable presumption that he is the most adequate plaintiff. § 78u-4(a)(3)(B)(iii)(I)(cc); *accord Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 401-02 (S.D.N.Y. 2004). Fed. R. Civ. P. 23(a) permits a party to sue on behalf of a class only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[3] During the Class Period, Sfiraiala paid $767,505 for 19,527 shares, and sold 8,527 of those shares for $343,622. *See* Lieberman Decl., Ex. C. The Deutsche Bank Investor Group expended a net of $213,282.53, paying $414,711.80 for 15,577 shares, and selling 8,413 shares for $201,328.27 during the class period. *See* Stocker Decl., Ex. B. Knauss expended a net of $131,525.02, paying that amount for 3,550 shares during the Class Period, and selling none during that time. *See* Apton Decl., Ex. B. Chester County expended a net of $77,730.99, paying $108,928.55 for 3,751 shares, and selling 1,875 shares for $31,557.56 during the Class Period. *See* Rosenfeld Decl., Ex. C. Finally, Ranson expended a net of $1,708.60, paying that amount for 54 shares, and selling none during the Class Period.

[4] While each movant or group used a slightly different share price to calculate the value of shares retained at the end of the Class Period (and therefore its losses on those shares) – ranging from $16.0387 per share in the Deutsche Bank Investor Group's estimate, *see* Stocker Decl., Ex. B, to approximately $16.2041 per share in Ranson's estimate, *see* Ranson Mem. of Law, Ex. 3 – Sfiraiala's estimated losses were greater than any other movant's, regardless of which retained share price was used.

8

For the purposes of appointment as lead plaintiff pursuant to the PSLRA, however, "the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met." *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (citing *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003)); *accord Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 229 F.R.D. at 411-12 ("Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative.'") (quoting *Weinberg,* 216 F.R.D. at 252).

The typicality requirement is satisfied if each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Janbay*, 272 F.R.D. at 120 (finding typicality requirement satisfied for purposes of lead counsel appointment where plaintiff investor group, like other proposed class members, purchased defendant's securities "at artificially inflated prices as a result of Defendants' misrepresentations and omissions") (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members." *Janbay*, 272 F.R.D. at 120 (alteration in original) (quoting *Bishop v. N.Y. City Dep't of Housing Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Plaintiff Sfiraiala has made the necessary preliminary showing of typicality. He alleges, as do the other plaintiffs, that he purchased DBA securities during the Class Period at prices that were "artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions," and he seeks the same relief, based on the same legal theories, as the other movants. Sfiraiala Mem. of Law, at 7.

The adequacy requirement, in turn, is satisfied where: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the plaintiff has sufficient interest in the outcome of the case to ensure vigorous advocacy." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015); *accord Janbay*, 272 F.R.D. at 120 (finding plaintiff investor group adequate to serve as lead plaintiff when there was "no evidence of antagonism between the interests" of the group and other proposed class members, the group had "a compelling interest" in the action because of its financial stake in the outcome, and it had selected counsel that was "highly experienced in prosecuting securities class actions").

Sfiraiala has also made a sufficient showing of adequacy. No party argues that he has any interests antagonistic to other class members, and the Court can identify none. Sfiraiala's financial losses will also likely motivate him to pursue this litigation vigorously on behalf of all class members. Finally, Sfiraiala has retained Pomerantz LLP, a firm which appears to possess significant experience in the area of securities litigation and securities fraud class actions, and would therefore be qualified, experienced, and generally able to conduct the litigation. *See Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at *7 (S.D.N.Y. July 23, 2014) (appointing the same firm, then called "Pomerantz Grossman Hufford Dahlstrom & Gross LLP," as lead counsel in PSLRA action, finding that the firm was "competent and experienced").

For the foregoing reasons, Sfiraiala is entitled to the presumption that he is the most adequate plaintiff. Because no grounds to rebut that presumption have been offered, Sfiraiala's motion for appointment as lead plaintiff in this action will be granted.

## D. Appointment of Lead Counsel

The most adequate plaintiff may, "subject to the approval of the court, select and retain counsel to represent the class." § 78u-4(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" *Francisco v. Abengoa, S.A.*, 2016 WL 3004664, at \*7 (S.D.N.Y. May 24, 2016) (quoting *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015)).

Here, Sfiraiala has selected the law firm of Pomerantz LLP as class counsel, and seeks court approval of this selection. In support of Sfiraiala's request, Jeremy A. Lieberman, an attorney at Pomerantz LLP, submitted the firm's resume. *See* Lieberman Decl., Ex. D (Dkt. No. 30-4). The resume provides a detailed description of the educational background and experience of the attorneys at the firm, including serving as counsel on cases in the fields of securities litigation, antitrust litigation, and corporate governance litigation. The Court concludes, as have other judges in this District, that Pomerantz LLP is qualified to serve as lead counsel. *See, e.g., In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 620 (S.D.N.Y. 2015) (Rakoff, J.) (appointing Pomerantz LLP as lead counsel in a PSLRA class action on behalf of investors in Petrobras, the Brazilian state-owned oil company, finding the firm "well qualified to serve as lead counsel"); *Stitt v. On Deck Capital, Inc.*, 2016 WL 889535, at \*3 (S.D.N.Y. Feb. 17, 2016) (Torres, J.) (appointing Pomerantz LLP as lead counsel in a PSLRA class action alleging false and misleading statements by a financing company in its registration statement, noting that the firm "has significant experience in securities litigation as lead plaintiffs counsel"). Accordingly, Sfiraiala's motion for approval of Pomerantz LLP's selection as lead plaintiffs' counsel will be granted.

## II. Evidence Preservation Provision

Defendant DBA takes no position on the appointment of lead plaintiff or approval of lead

counsel, but objects to the evidence preservation provision in Sfiraiala's proposed order (Dkt.

No. 28-1), which would provide:

> During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody, or control, including computer-generated and stored information, and materials such as computerized data and electronic mail, containing information which is relevant or which may lead to the discovery of information relevant to the subject matter of the pending litigation.

*Id.* at ¶ 9. While the language appears in his proposed order, Sfiraiala does not otherwise address

it in his motion, in his July 25, 2016 responding memorandum of law, or in his August 2, 2016

Notice of Non-Opposition to his own motion. DBA argues that the evidence preservation clause

is duplicative of the PSLRA's automatic evidence preservation requirements, and inappropriately

imposes duties beyond those imposed by the PSLRA.[5]

In any civil action, an obligation to preserve evidence arises when a party "has notice that

the evidence is relevant to litigation—most commonly when suit has already been filed,

providing the party responsible for the destruction with express notice, but also on occasion in

other circumstances, as for example when a party should have known that the evidence may be

relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). In

---

[5] The PSLRA provides for an automatic stay of discovery during the pendency of a motion to dismiss, and further provides that during such a stay:

> [A]ny party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(b)(3)(C)(i).

12

addition, in actions arising under the PSLRA, "the preservation of evidence in the possession of the parties is statutorily automatic." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 229 F.R.D. at 421 (denying request for order directing the preservation of evidence, "as such an order would either unnecessarily duplicate the obligations created under the PSLRA or . . . alter those obligations without justification") (quoting *In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1273 (D. Minn. 1997)). Here, no party suggests that any other party misunderstands its document-preservation obligations or lacks notice as to which types of documents need be preserved. The proposed language is therefore unnecessary. *See Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust*, 229 F.R.D. at 412.

## CONCLUSION

Sfiraiala's motion for appointment as lead plaintiff is GRANTED to the extent that (1) Sfiraiala is appointed to serve as lead plaintiff in this action, pursuant to section 21D(a)(3)(B)(iii) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA; and (2) Sfiraiala's selection of Pomerantz LLP as lead counsel is approved.

Lead counsel shall, either personally or through counsel designated by lead counsel: (a) coordinate the briefing and argument of motions, (b) coordinate the conduct of discovery proceedings, (c) coordinate the examination of witnesses in depositions, (d) coordinate the selection of counsel to act as a spokesperson at pretrial conferences, (e) call meetings of plaintiffs' counsel as they deem necessary and appropriate from time to time, (f) coordinate all settlement negotiations with counsel for defendants, (g) coordinate and direct pretrial discovery proceedings, preparation for trial, and the trial of this matter, and delegate work responsibilities to selected counsel as may be required, and (h) supervise any other matters concerning the prosecution, resolution, or settlement of this action. No motion, request for discovery, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of lead counsel, so as to prevent duplicative pleadings or

discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of lead counsel. Lead counsel shall have the responsibility of receiving and disseminating court orders and notices, shall be the contact between plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel. Defendants shall effect service of papers on plaintiffs by serving a copy of same on lead counsel by overnight mail service, electronic or hand delivery. Counsel in any related action that is consolidated with this Action shall be bound by this organization of plaintiffs' counsel.

The remaining motions for appointment as lead counsel, to the extent they remain pending, are DENIED. The Clerk of the Court is directed to close the motions at Dkt. Nos. 20, 22, 25, 28, and 31.

Dated: New York, New York
October ⅄, 2016

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**