```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/28/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re DEUTSCHE BANK
AKTIENGESELLSCHAFT SECURITIES
LITIGATION

16 Civ. 3495 (AT) (BCM)

**ORDER**

ANALISA TORRES, District Judge:

Lead Plaintiff Andrei Sfiraiala and Plaintiff Warren Ramanathan (collectively, "Plaintiffs") bring this securities class action on behalf of themselves and all others similarly situated against Defendants Deutsche Bank Aktiengesellshaft ("Deutsche Bank" or the "Bank"), Deutsche Bank Ltd. a/k/a Deutsche Bank LLC ("Deutsche Bank Russia"), Stefan Krause, Juergen Fitschen, Anshuman Jain, Stephan Leithner, Stuart Lewis, Rainer Neske, Henry Ritchotte, John Cryan, Marcus Schenck, Timothy Wiswell, Joerg Bongartz, and Batubay Ozkan (collectively, "Defendants"; and excluding Deutsche Bank, Deutsche Bank Russia, "Individual Defendants"), alleging that: (1) Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") and Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5"); and (2) the Individual Defendants violated Section 20(a) of the Securities Exchange Act of 1934 ("Section 20(a)").

Defendants Deutsche Bank, Cryan, Schenck, and Jain ("Moving Defendants") move to dismiss the consolidated class action complaint (the "complaint"), ECF No. 51, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs move for an order granting judicial notice of (1) a consent order or, in the alternative, leave to amend the

complaint to incorporate the consent order, and (2) a cease and desist order. For the reasons stated below, the motions are GRANTED.

## BACKGROUND[1]

I.   The Parties

In this consolidated securities class action, Plaintiffs purchased Deutsche Bank securities at, they allege, artificially inflated prices and bring this action on behalf of all individuals who purchased or acquired Deutsche Bank securities between January 31, 2013 and July 26, 2016. Compl. ¶¶ 1, 10, 11. Plaintiffs name as defendants Deutsche Bank, Deutsche Bank Russia, and twelve individuals. *Id.* ¶¶ 12-25. The present motion is brought on behalf of Deutsche Bank and three of the Individual Defendants, ECF No. 85, because the remaining Defendants had not yet been served, *see* ECF No. 65 at 1 n.1.

Deutsche Bank "provides investment, financial, and related products and services worldwide" and is publicly traded on the New York Stock Exchange under the ticker symbol "DB." Compl. ¶ 12. Cryan has served as Deutsche Bank's CEO since May 2016, and previously served as Co-Chief Executive Officer, the Co-Chairman of the Bank's Management Board, the Chairman of Deutsche Bank's Audit Committee, and a member of the Bank's Risk Committee. *Id.* ¶ 21. Schenck has "served as the CFO of Deutsche Bank and a Member of the Bank's Management Board since May 21, 2015." *Id.* ¶ 22. Jain "served as the Co-Chairman of

---

[1] The following factual background is based on the allegations in the complaint, which the Court accepts as true for purposes of the instant motion. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). In addition, the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.* (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)). These include Deutsche Bank's SEC Forms 20-F and Annual Reports to Shareholders for the years 2012 through 2015, which are attached to Defendants' motion. *See* Charles A. Gilman Aff. Exs. 1-8, ECF No. 87.

Deutsche Bank's Management Board from 2009 to June 30, 2015, and the Bank's Co-Chief Executive Officer from May 31, 2012 to June 30, 2015." *Id.* ¶ 16.

II.   The Bank's Alleged Prior Wrongdoings

The omplaint devotes twenty-three pages to discussing prior wrongdoings by Deutsche Bank. *See id.* ¶¶ 45-88. Because these allegations are not central to Plaintiffs' claims of material misrepresentations or omissions, the Court only briefly summarizes them here. The complaint describes "significant deficiencies" related to Deutsche Bank's anti-money laundering ("AML") policies and procedures: warnings as early as 2002 from the Federal Reserve Bank of New York ("FRBNY") about inadequacies in the Bank's reporting and monitoring functions, *id.* ¶ 58; a 2005 agreement between Deutsche Bank Trust Company Americas ("DBTCA"), the FRBNY, and the New York State Banking Department to address deficiencies in the Bank's AML compliance programs, *id.* ¶¶ 59-60; a warning by FRBNY examiners in 2007 regarding deficiencies in reporting, monitoring, and compliance, *id.* ¶ 61; warnings from FRBNY examiners in 2012 and 2013 regarding "a 'disjointed' regulatory-reporting system and 'weaknesses' in the technology systems used by Deutsche Bank subsidiaries," *id.* ¶¶ 62-67; a letter dated December 11, 2013 from the FRBNY outlining the lack of appropriate controls in the Bank's U.S. units, *id.* ¶¶ 68-70; failures identified by the New York State Department of Financial Services ("NY DFS") and the Board of Governors of the Federal Reserve System regarding the Bank's failures to comply with U.S. sanctions, *id.* ¶¶ 71-78; that the German federal bank supervisor BaFin raided Deutsche Bank's headquarters in Frankfurt relating to a "massive tax fraud using electronic trading of $CO_2$ emission certificates," *id.* ¶¶ 79-82; that in 2014, the UK's financial regulatory agency put the Bank's London office under enhanced supervision based on concerns about serious failings in the areas of AML, terrorist financing, and

3

violating sanctions, *id.* ¶¶ 83-85; a fine from South Africa's banking regulator in February 2015 for failing to implement appropriate AML controls, *id.* ¶ 86; and a fine from Dubai's Financial Services Authority for failures in its control systems related to booking clients and AML, *id.* ¶¶ 87-88.

In addition, as discussed in more detail below, Plaintiffs ask that the Court take judicial notice of a consent order issued by the NY DFS in January 2017 and an order to cease and desist issued by the Board of Governors of the Federal Reserve System in May 2017. *See* ECF Nos. 92-94, 104-06.

### III. The "Mirror-Trade" Scheme and its Repercussions

Between 2011 and 2015, Deutsche Bank facilitated thousands of transactions that resulted in money being laundered out of Russia. Compl. ¶¶ 89-90. In these "mirror trades," a "Deutsche Bank customer in Russia would buy a local blue-chip Russian stock, such as Lukoil, for rubles, while another offshore customer would simultaneously sell the same stock in London for dollars." *Id.* ¶ 89. Deutsche Bank has admitted that it has found a total of $10 billion of suspicious trade, including $6 billion in mirror trades. *Id.*

Before conducting trades, Deutsche Bank's compliance departments in London and Moscow were supposed to perform a "double check" of any new fund that wished to trade with Deutsche Bank. *Id.* ¶ 94. In addition, the Bank was required to complete a "know your client" ("KYC") assessment to determine if the "client had any taint of criminality." *Id.* However, this scrutiny was perfunctory, at best. *Id.* And although a 2014 audit of Deutsche Bank's Moscow operations found "'severe weaknesses' in the unit's processes for vetting customers," these mirror trades continued. *Id.* ¶ 109. The audit results were not disclosed to investors. *Id.*

The complaint references three confidential witnesses who highlight deficiencies in the Bank's AML program. The first, the Head of Russian Equity Sales, who described the compliance staff as "one step above the janitors," stated that it was not realistic to know the bank's clients, nor was it possible to know which clients were taking money from "shady sources." *Id.* ¶¶ 117, 121, 122. A second confidential witness, an Associate Compliance Officer in the Bank's Jacksonville, Florida office, stated that the AML programs and internal controls were "ineffective and poorly managed," that there was little information collected about the ultimate owners of funds transmitted through the Deutsche Bank system, and that known problems were not addressed. *Id.* ¶¶ 124-26. Finally, a third confidential witness, who also worked in the Bank's Jacksonville office, noted a "significant need for more management oversight over the entire AML program'" and the lack of "systematic, end-to-end assessments" by an internal auditor to ensure that the AML program was working as intended. *Id.* ¶¶ 130, 131, 134. This confidential witness also describes the Bank's practice of putting certain individuals and entities on a "white list" such that transactions that should have been checked against a "watch list" were exempted, making it easy to launder funds. *Id.* ¶ 135.

IV.    Plaintiffs' Allegations of Violations of Securities Law

News of the Russia mirror trades broke in June 2015. *Id.* ¶ 286 (describing a June 5, 2015 *Bloomberg* article). Based on this news report, shares of Deutsche Bank fell $0.71 on June 5. *Id.* ¶ 287. News reports detailing government investigations of the mirror trades, the sanctions imposed on the Bank, and other related costs caused the Bank's shares to fall throughout the second half of 2015 and into 2016. *See id.* ¶¶ 274-319.

Over the course of sixty pages, the complaint describes statements made by Defendants between 2013 and 2016 in annual reports, corporate responsibility reports, financial statements,

5

earnings calls, press conferences, SEC 20-F Forms, and on Defendants' websites that Plaintiffs allege were materially false or misleading. *Id.* ¶¶ 140-271. These statements "falsely and repeatedly reassured investors that the bank had significantly strengthened its internal controls to prevent exactly the type of money laundering that was concurrently occurring via the Russian mirror trades." Pls. Opp. 17, ECF No. 91. For each of these statements, Plaintiffs allege that:

> The statements . . . were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the banks' internal controls, anti-money laundering compliance, culture, business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that, as explained in detail *supra*: (1) Deutsche Bank and Deutsche Bank Russia had serious and systemic failings in their systems and controls against money laundering, financing terrorism, aiding against international sanctions, and committing financial crimes; (2) Deutsche Bank and Deutsche Bank Russia's internal systems and controls over financial reporting and their disclosure controls and procedures were not effective; (3) the culture at Deutsche Bank and Deutsche Bank Russia had not changed, as employees, including top management in Russia, were engaging in money-laundering activities; (4) with respect to the reported financial revenue and/or income metrics, Deutsche Bank and Deutsche Bank Russia failed to disclose that a portion of those financial metrics were derived from illicit activities such as money laundering; and (5) as a result, Deutsche Bank and Deutsche Bank Russia's public statements were materially false and misleading at all relevant times.

Compl. ¶¶ 171, 215, 261, 273.

V.  Procedural History

On May 10, 2016, Plaintiff James Ranson, individually and on behalf of purchasers of Deutsche Bank securities between April 15, 2013 and April 29, 2016, filed a thirty-two page complaint against Deutsche Bank, Krause, Fitschen, Jain, Cryan, and Schenck. ECF No. 1. On May 12, 2016, Ramanathan filed a nearly identical complaint. *Ramanathan v. Deutsche Bank Aktiengesellschaft et al.*, No. 16 Civ. 3539, ECF No. 1. On June 21, 2016, the two cases were consolidated. ECF No. 19. On October 4, 2016, the Honorable Barbara C. Moses appointed Sfiraiala as lead plaintiff and approved of Sfiraiala's selection of lead counsel. ECF

6

No. 49. On December 16, 2016, Plaintiffs filed their consolidated amended class action complaint. ECF No. 51. Moving Defendants' motion to dismiss was filed on February 21, 2017, and fully submitted on March 13, 2017. ECF Nos. 85-87, 91, 98.

## DISCUSSION

I. <u>Legal Standards</u>

    a. Motion to Dismiss: General Legal Standard

As a general matter, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A court should reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and "bald assertions . . . unsupported" by details which are insufficient to meet the minimum pleading requirements for a cause of action, *Lawtone-Bowles v. New York City Hous. Auth.*, No. 13 Civ. 1434, 2014 WL 705272, at *2-3 (S.D.N.Y. Feb. 20, 2014).

    b. Motion to Dismiss: Heightened Pleading Standards

A complaint "alleging securities fraud must satisfy the heightened pleading requirements" of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA") "by stating with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

7

551 U.S. 308, 319-20 (2007)). Rule 9(b) requires that a securities fraud claim based on misstatements must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 108 (2d Cir. 2012) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)). "Under the PSLRA, the complaint must 'specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading,' and 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(1), (2)). For "Section 10(b) and Rule 10b-5 actions, the required state of mind is 'scienter,' that is, an intent 'to deceive, manipulate, or defraud.'" *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 464 (S.D.N.Y. 2008) (quoting *Tellabs*, 551 U.S. at 313). This inference of scienter "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. However, the inference "need not be irrefutable, *i.e.,* of the 'smoking-gun' genre, or even the 'most plausible of competing inferences,'" *id.* at 324, and the court must "assess all the allegations holistically" rather than "scrutiniz[ing] each allegation in isolation," *id.* at 326.

    c.  Motion for Judicial Notice

"Courts may also take judicial notice of matters of public record when considering motions to dismiss." *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 590 (S.D.N.Y. 2015) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). "Federal Rule of Evidence 201 authorizes a court to 'judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose

8

accuracy cannot reasonably be questioned . . . at any stage in the proceeding,' including on a motion to dismiss." *Id.* at 588 n.4 (omissions in original) (quoting Fed. R. Evid. 201).

II.    Plaintiffs' Motions for Judicial Notice

Plaintiffs request that the Court take judicial notice of two documents: a consent order between Deutsche Bank and the New York State Department of Financial Services dated January 30, 2017 ("NY DFS Consent Order"); and an order to cease and desist and order of assessment of a civil money penalty issued by the Board of Governors of the Federal Reserve System and consented to by Deutsche Bank, dated May 26, 2017 ("Cease and Desist Order). *See* ECF Nos. 92-94, 104-06. Moving Defendants do not object to the Court taking judicial notice of the NY DFS Consent Order. Defs. Reply 4, ECF No. 98.

However, Moving Defendants object to the Court taking judicial notice of the Cease and Desist Order because "a consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues . . . can not be used as evidence in subsequent litigation between that corporation and another party." Defs. Resp. 3, ECF No. 107 (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)). Courts in this district "have read *Lipsky* with varying degrees of breadth." *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11 Civ. 6805, 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013). As the Honorable Denise L. Cote has explained, "*Lipsky* principally addressed whether a complaint had adequately pleaded that the offering documents filed by the defendants in connection with the plaintiff's shares contained material omissions and misrepresentations. Instead of discussing its own offering documents, the plaintiff had copied passages from an SEC complaint with allegations about *other* offering documents." *Id.* (citation omitted) (citing *Lipsky*, 551 F.2d at 891). Here, in contrast, the cease and desist order is offered not to replace Plaintiffs'

9

descriptions of offering documents alleged to contain material omissions or misrepresentations, but to support Plaintiffs' allegations of deficiencies in the Bank's AML systems. *See* Pls. Mem. Law in Supp. Mot. Req. Judicial Notice 4-5, ECF No. 105.

The Court takes judicial notice of both documents. There cannot be reasonable dispute over either document and both documents are readily available from the government agencies that issued them. *See* NY DFS Consent Order, *available at* http://www.dfs.ny.gov/about/ea/ea170130.pdf; Cease and Desist Order, *available at* https://www.federalreserve.gov/newsevents/pressreleases/files/enf20170530a1.pdf; *see also, e.g., Sullivan v. Barclays PLC*, No. 13 Civ. 2811, 2017 WL 685570, at *20-21 (S.D.N.Y. Feb. 21, 2017) (taking judicial notice of government fines and deferred-prosecution agreements). Accordingly, Plaintiffs' motions are GRANTED.

III. <u>Motion to Dismiss: Section 10(b) and Rule 10b-5</u>

Section 10(b) makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5, in turn, makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b).

"To state a claim under [Section 10(b) and] Rule 10b-5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Solow v.*

*Citigroup, Inc.*, 507 Fed. App'x 81, 82 (2d Cir. 2013) (quoting *ATSI Commc'ns*, 493 F.3d at 105). Moving Defendants argue that Plaintiffs fail to allege an actionable misstatement or omission and fail to adequately allege scienter. The Court agrees.

  a. Material Misstatements and Omissions

"A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false *at the time it was made*." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996)), *aff'd*, 604 Fed. App'x 62 (2d Cir. 2015). "The Second Circuit has repeatedly stated that plaintiffs must do more than simply assert that a statement is false—'they must demonstrate with specificity why that is so.'" *Id.* (quoting *Romback*, 355 F.3d at 174). "The Second Circuit has commented that district courts should not have to 'search the long quotations in the complaint for particular false statements, and then determine on its own initiative how and why the statements were false and how other facts might show a strong inference of scienter.'" *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 356 (S.D.N.Y. 2015) (quoting *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 Fed. App'x 32, 38 (2d Cir. 2012)), *aff'd sub nom. Klein v. PetroChina Co.*, 644 Fed. App'x 13, 14 (2d Cir. 2016).

Plaintiffs fail to adequately plead an actionable material misstatement. As an initial matter, many of Plaintiffs' allegations span over multiple pages without any indication of what, specifically, Plaintiffs allege to be false or misleading. *See, e.g.*, ¶ 146 (totaling nearly 800 words across three pages); *id.* ¶ 157 (over 550 words across three pages); *id.* ¶¶ 198, 241, 268; *see also PetroChina*, 120 F. Supp. 3d at 356 (disapprovingly describing a complaint that "simply contains large block quotations taken directly from PetroChina's annual reports, codes of ethics,

11

and website" in which "[m]ost of these block quotes are several paragraphs long and are preceded by a conclusory assertion that they were falsely made"). Not only is the complaint replete with such block quotations, but the complaint fails to demonstrate with specificity how any of the statements are allegedly false. On the contrary, the complaint employs the same conclusory formula (quoted above when describing Plaintiffs' allegations) four separate times in the complaint to cover *all* of the allegedly material misrepresentations. *See* Compl. ¶¶ 171, 215, 261, 273. This manner of pleading was squarely rejected by the Second Circuit in *Bahash*, which affirmed a dismissal of a 280-page complaint that "frequently cross-referenced" a single paragraph that alleged in a blanket fashion that all of the preceding paragraphs were materially false and misleading. 506 Fed. App'x at 37-38. As the Second Circuit made clear, this type of complaint "does not comport with our exhortation that plaintiffs 'must demonstrate with specificity why and how' each statement is materially false or misleading." *Id.* (quoting *Rombach*, 355 F.3d at 174). On this basis alone, the complaint fails to meet the pleading requirements necessary to state a claim.

Furthermore, a review of Plaintiffs' allegedly misleading statements makes clear that the statements identified in the complaint are insufficient to state a claim. Rather than address all 119 of Plaintiffs' allegedly misleading statements, *see* Compl. ¶¶ 140-41, 143-52, 154-58, 160-70, 172-90, 192-202, 204-08, 210-14, 216-27, 229-44, 246-49, 251-60, 262-63, 265-71, the Court addresses the seventeen excerpts from ten paragraphs that Plaintiffs highlight in their opposition brief. *See* Pls. Opp. 17-19 (quoting Compl. ¶¶ 139, 143, 146, 156, 157, 164, 166, 174, 207, 212). As Moving Defendants rightly argue, *see* Defs. Reply App. A, ECF No. 98, these statements are insufficient because they fall into one of three categories: first, statements

about which the complaint fails to show why they were false when made; second, statements that are aspirational; or third, statements that suggest mere corporate mismanagement.

As to the first category of statements, Plaintiffs have failed to "demonstrate with specificity why" the statements are false. *Romback*, 355 F.3d at 174. On the contrary, many of the statements alleged in the complaint may be true despite the existence of the Russia mirror-trade scheme, and the complaint does not indicate how or why these statements are false.[2] The complaint alleges no facts to suggest that the Bank did not, for example, review or strengthen its compliance and AML programs, that the Bank did not frequently review its AML goals, or that the Bank did not establish the AFCC.[3] The complaint fails, therefore, to show why such statements are false. *See, e.g., In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 379 (S.D.N.Y. 2004).

Second, the complaint is brimming with aspirational statements that do not give rise to a securities violation. "Statements of general corporate optimism . . . do not give rise to securities violations." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of*

---

[2] Such statements quoted in Plaintiffs' opposition brief include: "We are reviewing potential transactions and clients more critically than in the past," Compl. ¶ 156; "During 2012, we continued to strengthen our control environment, tighten our systems and processes and enhancing our monitoring capabilities," *id.* ¶ 143; "We have laid strong foundations for long-term culture change, by . . . significantly tightening our control environment," *id.* ¶ 139; "In 2013, we enhanced the governance, resources and processes of the Anti-Money Laundering (AML) function," *id.* ¶ 207; "Our anti-money laundering requirements apply worldwide . . . [and] we routinely review our goals and strategies for the prevention of money laundering," *id.* ¶ 162; "We frequently review AML strategies, goals, and objectives to maintain an effective program that reflects best practices," *id.* ¶ 157; and "We have established an Anti Financial Crime Committee (AFCC) . . . [which] responsibilities include ensuring conformity with the law, preventing criminal acts or exposing and investigation them," *id.* ¶ 166.

[3] Other statements alleged in the complaint contain the same flaw. *See, e.g., id.* ¶ 175 (quoting the Bank's website that states that the Bank is "spending 1bn € to reinforce our systems" and that the Bank has "significantly strengthened our compliance department, adding some 200 people in 2013 and with plans to hire a similar number in 2014").

13

*Scotland Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015) (citing *Rombach*, 355 F.3d at 174). "It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery,' meaning that they are 'too general to cause a reasonable investor to rely upon them.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (quoting *ECA*, 553 F.3d at 206).[4] Courts have regularly found that such statements do not give rise to a securities action. *See, e.g., Bahash*, 506 Fed. App'x at 37 (finding "statements . . . regarding McGraw-Hill's integrity and credibility," such as "[t]he integrity, reliability and credibility of S & P has enabled us to compete successfully in an increasingly global and complex market, and that is true today and we are confident it will be so in the future," to be "the type of mere 'puffery' that we have previously held to be not actionable"); *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *34 (S.D.N.Y. Sept. 28, 2012) (finding statements that UBS went "above and beyond what laws and regulations require" and that UBS "adheres to high ethical standards" to be non-actionable puffery). Even assuming the statements "were knowingly and verifiably false when made . . . their generality . . . prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *City of Pontiac*, 752 F.3d at 183.

---

[4] Such statements identified by Plaintiffs include: "We comply with all laws and regulations . . . We do not engage with any external party that is involved in illegal or improper activities," Compl. ¶ 212; "How are we achieving our goals? As a minimum, we adhere to international standards and guidelines, in relation to areas such as . . . anti-money laundering," *id.* ¶ 164; "We have to demonstrate that we play a valuable role in society and that we act with integrity and responsibility," *id.* ¶ 156; "We have laid strong foundations for long-term cultural change, by launching our new values and beliefs," *id.* ¶ 139; "If we cannot obtain or retain business without improper conduct, then we do not engage in that business," *id.* ¶ 207; "Deutsche bank is geared to strict conformity with the law and has been achieving good results for years," *id.* ¶ 166; "Deutsche Bank is committed to ensuring the robust risk management of financial crime," *id.*; "Let me assure you, cultural change is sweeping through the bank," *id.* ¶ 174.

14

Third, although there is evidence that the Bank's AML and KYC procedures were deficient at identifying the mirror trades, statements concerning the adequacy of the Bank's internal controls are not actionable. Many of Plaintiffs' identified statements state that certain internal control policies are in place, but Plaintiffs do not plead that the controls did not exist, but merely that they were ineffective. "Mere allegations of corporate mismanagement are not actionable." *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 292 (S.D.N.Y. 2014) (citing *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977)). These statements are not actionable because "Plaintiff alleges neither facts showing that the descriptions of the processes were false or misleading at the time they were included in the public statements, nor facts showing that the processes were not followed."[5] *Citigroup*, 330 F. Supp. 2d at 379; *see also Gusinsky v. Barclays PLC*, 944 F. Supp. 2d 279, 288 (S.D.N.Y. 2013) (dismissing complaint alleging securities violations based on statements such as "the Company's operation of a system of internal controls which provides reasonable assurance of effective and efficient operations . . . including . . . compliance with laws and regulations" (omissions in original)), *aff'd in relevant part sub nom. Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014); *Magnum Hunter Res. Corp.*, 26 F. Supp. 3d at 284, 292.

---

[5] Plaintiffs allegations of this sort include: "In order to comply with Anti-Money Laundering legal and regulatory requirements . . . Know-Your-Customer (KYC) procedures are in place," Compl. ¶ 157; "We scrutinize clients and current transactions using meticulous procedures and automated monitoring system through this compliance program," *id.* ¶ 166; "Deutsche Bank has an anti-corruption policy that is backed by[] appropriate compliance training measures for staff . . . [and] risk-based procedures for monitoring third parties," *id.* ¶ 162; "We have developed effective procedures for assessing clients . . . and a process for accepting new clients in order to facilitate comprehensive compliance," *id.* ¶ 166; "Know-Your-Customer (KYC) is an ongoing process, from the adoption of the client throughout the life of the relationship. Deutsche Bank's KYC policies cover new client adoption as well as regular reviews and screening of existing client relationships," *id.* ¶ 207; and "[A] global risk assessment is performed on a regular basis," *id.* ¶ 146.

Finally, to the extent Plaintiffs argue that Defendants had a duty to disclose the Bank's internal control deficiencies, *see* Pls. Opp. 25-26, this argument fails. "An omission is actionable under federal securities laws only when the defendant is subject to a duty to disclose the omitted facts." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 575 (S.D.N.Y. 2013) (alterations omitted) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)). The duty to disclose can arise either (1) "expressly pursuant to an independent statute or regulation—i.e., an affirmative legal disclosure obligation"; or (2) "as a result of the ongoing duty to avoid rendering existing statements misleading by failing to disclose material facts." *In re Sanofi-Aventis Sec. Litig*, 774 F. Supp. 2d 549, 561 (S.D.N.Y. 2011) (quoting *Thesling v. Bioenvision, Inc.*, 374 Fed. App'x 141, 143 (2d Cir. 2010)). Plaintiffs argue that Deutsche Bank chose "to speak in half-truths," which is "actionable under the federal securities laws." Pls. Opp. 26. However, "revealing one fact about a subject does not trigger a duty to reveal all facts on the subject." *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 192 F. Supp. 3d 456, 471 (S.D.N.Y. 2016) (quoting *Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 274 (S.D.N.Y. 2012)). A company is not obligated to disclose uncharged illegal conduct even as it discloses "assertions about integrity and transparency" and "statements about regulatory investigations." *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 580 (S.D.N.Y. 2016); *see also id.* ("Corporations do not, as a general matter, have a duty 'to disclose uncharged, unadjudicated wrongdoing.'" (quoting *City of Pontiac*, 752 F.3d at 184)); *UBS AG*, 2012 WL 4471265, at *31. Plaintiffs have failed to identify any existing statements that would be rendered misleading by failing to disclose a material fact.

16

b. Scienter

Because Plaintiffs fail to plead any material misstatements or omissions, the Court only briefly addresses scienter. The PSLRA requires plaintiffs to "*with respect to each act or omission* alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). A court must decide "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23. The inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. "The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA*, 553 F.3d at 198. "When the defendant is a corporate entity . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *PetroChina*, 120 F. Supp. 3d at 361 (omission in original) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008)). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *United States v. TEVA Pharm. USA, Inc.*, No. 13 Civ. 3702, 2016 WL 750720, at *12 (S.D.N.Y. Feb. 22, 2016) (quoting *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Plaintiffs have failed to adequately allege scienter. The complaint is devoid of specific allegations as to any defendant that give rise to a strong inference of scienter as to any alleged misstatement or omission. Instead, Plaintiffs seek to imply scienter by drawing a connection

between the Russia mirror trades and prior government investigations. *See* Compl. ¶¶ 53-88; Pls. Opp. 6-14. However, "Plaintiffs' citation to a number of lawsuits and government investigations involving [the defendants] provides no evidence of scienter." *Union Cent. Life Ins. Co. v. Ally Fin., Inc.*, No. 11 Civ. 2890, 2013 WL 2154381, at *1 (S.D.N.Y. Mar. 29, 2013). And the complaint does not demonstrate either a motive and opportunity to commit fraud or recklessness on the part of the Bank or the Individual Defendants. On the contrary, the Bank was committed to strengthening its compliance and control functions—as discussed above, the complaint makes no plausible allegations that the bank was not, for instance "investing EUR 1 billion to elevate its systems and controls," Compl. ¶ 170—and so any failures of these systems suggest "an inference of potentially poor . . . management," not a strong inference of scienter. *Magnum Hunter Res. Corp.*, 26 F. Supp. 3d at 298-99; *see also id.* at 297-98 ("While Magnum Hunter clearly made numerous accounting errors and revealed internal control weaknesses in dribs and drabs, as it were, over the relevant period, plaintiffs do not allege specific facts allowing for a 'strong inference' that defendants acted recklessly in their statements to the public. Rather, it is equally plausible that defendants were in a constant game of 'Catch up'—acknowledging the company's material weaknesses and disclosing their continued efforts to resolve them, only to learn of yet more.").

Further, Plaintiffs use of confidential witnesses do not save their claims. "[A]s with all allegations going to scienter, confidential source allegations must show that individual defendants actually possessed the knowledge highlighting the falsity of public statements; conclusory statements that defendants 'were aware' of certain information, and mere allegations that defendants 'would have' or 'should have' had such knowledge [are] insufficient." *Glaser v.*

*The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011) (citing *Campo v. Sears Holdings Corp.*, 371 Fed. App'x 212, 217 (2d Cir. 2010)).

*   *   *

In sum, Plaintiffs have failed to adequately articulate with sufficient specificity why any of the statements identified in the complaint are false, the statements identified by Plaintiffs in their brief are of the sort that courts routinely find not to be actionable, and Plaintiffs have failed to allege scienter with adequate specificity. Accordingly, Moving Defendants' motion to dismiss is GRANTED.

IV. The Non-Moving Defendants

"The district court has the power to dismiss a complaint against non-moving defendants, but such power should be exercised cautiously and on notice." *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (citing *Wachtler v. County of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994)) (dismissing securities claims against defendants who have neither appeared nor moved to dismiss). Although the non-moving Defendants have not appeared, Plaintiffs were on notice of these grounds for dismissal through Moving Defendants' motion and Plaintiffs have had an opportunity to respond. Because many of the deficiencies discussed above apply equally to the non-moving Defendants, Plaintiffs' claims against these Defendants are DISMISSED. *See PetroChina*, 120 F. Supp. 3d at 368-69.

V. Motion to Dismiss: Section 20(a)

Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith

and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t. To state a claim under Section 20(a), "a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns*, 493 F.3d at 108 (citing *SEC v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)). Because section 20(a) liability is predicated on a primary violation of securities law, these claims are likewise DISMISSED. *Id.*; *see PetroChina*, 120 F. Supp. 3d at 369 (citing *Rombach*, 355 F.3d at 178).

## CONCLUSION

For the reasons stated above, Plaintiffs' motions for judicial notice are GRANTED and Defendants' motion to dismiss is GRANTED.[6] The Clerk of Court is directed to terminate the motions at ECF Nos. 85, 92, and 104 and to close the case.

SO ORDERED.

Dated: June 28, 2017
New York, New York

ANALISA TORRES
United States District Judge

---

[6] The PSLRA requires the Court the court to "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1). Although the Court concludes that the complaint fails to state a claim, "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). The Court does not find that the claims or defenses were harassing, frivolous, or utterly lacking in support. In addition, Defendants did not allege improper conduct or move for sanctions. *See PetroChina*, 120 F. Supp. 3d at 369 n.33. Accordingly, the Court finds that all parties and counsel have complied with Rule 11(b).