UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE DEUTSCHE BANK AKTIENGESELLSCHAFT SECURITIES LITIGATION | Case No. 1:16-cv-03495 (AT) (BCM) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO ALTER OR AMEND THE COURT'S ORDER AND JUDGMENT, OR FOR RELIEF FROM SAID ORDER AND JUDGMENT, AND FOR LEAVE TO AMEND**

Plaintiffs move pursuant to Fed. R. Civ. P. 59(e) and 60 to alter or amend the Order (ECF No. 109) and Judgment (ECF No. 110) dated June 30, 2017, or for relief from said Judgment, to provide that the dismissal be without prejudice, and pursuant to Fed. R. Civ. P. 15(a) for leave to amend the Consolidated Amended Complaint (ECF. No. 51) (the "Complaint").

**PRELIMINARY STATEMENT**

Plaintiffs request that the Court alter or amend the June 30, 2017 judgment and grant Plaintiffs' request to alter the judgment and for leave to amend to cure the perceived pleading deficiencies in the Complaint, including, *inter alia*, to more precisely match up the false and misleading statements forming the basis of Plaintiffs' claims with the reasons why those statements are misleading. Courts have routinely granted leave to amend where, as here, a complaint is dismissed for failure to plead fraud with particularity pursuant to Fed. R. Civ. P. 9(b).

# ARGUMENT

### I. Standard on a Motion to Alter or Amend a Judgment Under Fed. R. Civ. P. 59(e) and for Relief From Judgment Under Rule 60

A district court may alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e) to correct a clear error of law or prevent manifest injustice. *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008) (internal citation and quotations omitted). Rule 59(e) allows the Court to "alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Moreover, under Rule 60, within a reasonable time, a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" for, among other things, "mistake," "newly discovered evidence, or "any other reason that justifies relief."

As set forth herein, Plaintiffs readily meet the standards under Fed. R. Civ. P. 59(e) and 60.

### II. Plaintiffs Should be Granted Leave to Amend

Fed. R. Civ. P. 15(a) provides that a court shall grant leave to amend "freely . . . when justice so requires." F.R.C.P. 15(a); *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998) (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Dismissals for insufficient pleadings, such as here, are ordinarily granted with leave to replead. *Stern v. General Electric Co.*, 924 F.2d 472, 477-78 (2d Cir. 1991); *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 648 (E.D.N.Y. 2003) (granting plaintiffs leave to amend "all of the claims that are dismissed in this decision"). "[O]utright dismissals for reasons not going to the merits is viewed with disfavor in the federal courts." *Nagler v. Admiral Corp.*, 248 F.2d 319, 322 (2d Cir. 1957).

In particular, complaints dismissed for failure to plead fraud with the requisite particularity under Rule 9(b), such as here, are "almost always" dismissed with leave to amend.

2

2A J. Moore & J. Lucas, *Moore's Federal Practice*, 9.03 at 9-34 (2d ed. 1986); *Luce v. Edelstein*, 802 F.2d 49, 56-7 (2d Cir. 1986); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (holding that plaintiffs should have been granted leave to replead fraud claims with requisite particularity); *Pross v. Katz*, 784 F.2d 455, 459 (2d Cir. 1986) (holding that plaintiff was entitled to leave to amend complaint because it could be cured by appropriate amendment). "Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

Here, in response to the Court's June 28, 2017 Order, Plaintiffs have diligently revised and amended the Complaint to more specifically clarify the statements alleged to be false and misleading and to more precisely link these statements to the reasons why they were false and misleading. *See* Exhibit A, [Proposed] Consolidated Second Amended Complaint for Violations of Federal Securities Laws ("Proposed Complaint"); Exhibit B, Redline of [Proposed] Consolidated Second Amended Complaint for Violations of Federal Securities Laws ("Redline Complaint"). For example, the Proposed Complaint sets forth in bold text all statements that are alleged to be false and misleading and shortens the context in which such statements were made. *Compare* Consolidated Class Action Complaint (ECF. No. 51) at ¶146 *with* Redline Complaint at ¶169. The Proposed Complaint also explains more clearly, for example, why the statements made in ¶169 concerning the bank's evaluation of money-laundering risks were false and misleading. As exemplified, *inter alia*, by the investigation conducted by the New York State Department of Financial Services ("NY DFS"), the bank "failed to accurately rate its country and client risks for money laundering throughout the relevant time period and lacked a global policy benchmarking its risk appetite," "Deutsche Bank was not in line with peer banks, which rated

Russia as high risk well before Deutsche Bank did in late 2014," and "Deutsche Bank Group Audit specifically identified deficiencies in the Bank's risk rating methodology in a Global Anti-Money Laundering Report prepared in 2012."  Proposed Complaint ¶¶146, 149, 157(1), 169-170.[1]  These facts were hidden from investors.

The Proposed Complaint also specifies why Deutsche Bank's statement that "we have developed effective procedures for assessing clients (Know Your Customer or KYC)" was false and misleading.  Among other reasons, as the NY DFS found, during the relevant time period, "the bank's Know Your Customer (KYC) processes were weak, functioning merely as a checklist with employees mechanically focused on ensuring documentation was collected, rather than shining a critical light on information provided by potential customers."  *See*, *e.g.*, ¶¶231(9), 233.

The Proposed Complaint also crystalizes Defendants' scienter.  For example, it pleads that, as the NY DFS investigation uncovered, "the suspicious mirror-trading machinations occurred at a time Deutsche Bank was on clear notice of numerous deficiencies in its BSA/AML systems and management, and yet the steps it took to remediate the situation proved seriously inadequate," and that "during the relevant period, Deutsche Bank suffered from widespread and well-known weaknesses in its KYC processes for onboarding new clients."  ¶¶147, 149.  The NY DFS found that "Deutsche Bank has a substantial history of regulatory reporting violations over the last decade—one that placed it squarely on notice of the need to address potential compliance issued that permitted the mirror-trading scheme to fester . . . In light of this regulatory history, the suspicious mirror trading activity, which commenced in 2011 and continued until as recently as February 2015, occurred after the Bank was on clear notice of serious and widespread

---

[1] The findings by the NY DFS were not alleged in the complaint the Court dismissed, although the court took judicial notice of the NY DFS's Consent Order. (ECF No. 109 at 9-10).

4

compliance issued dating back a decade." ¶149. Moreover, the Proposed Complaint pleads that "Deutsche Bank's operations scored the worst out of 28 countries whose KYC procedures were reviewed by Deustche Bank in an internal report released to senior management in early 2014." *Id*.

Additionally, as detailed in the Proposed Complaint, before and during the Class Period Defendants received multiple warnings from the Federal Reserve Bank, detailing unaddressed deficiencies that contributed to significant AML violations. In a December 11, 2013 letter, which Deutsche Bank did not disclose to investors, the Federal Reserve warned Deutsche Bank's U.S. executives about the bank's lack of appropriate internal controls, governance, auditing and technology systems. ¶71. The regulator also found, among other things, that Deutsche Bank failed to detect violations as a result of ineffective risk assessment processes and a breakdown in the independent monitoring and oversight function of the Compliance Group and Internal Audit. *Id*. The regulator deemed this failure "unacceptable." *Id*.

With respect to motive, the Proposed Complaint pleads, along with the NY DFS's findings that "greed and corruption motivated the DB-Moscow traders," additional findings that "although Deutsche Bank Group Audit specifically identified deficiencies in the Bank's risk rating methodology in a Global Anti-Money Laundering Report prepared in 2012, DB-Moscow resisted adopting modified risk rating procedures because most of their clients would be re-classified as high risk, and the office lacked the operational resources required to handle the increased compliance workload." ¶149.

Under these circumstances, amendment of the judgment to allow for the filing of the Proposed Complaint is appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court amend or alter the Judgment providing that the dismissal was without prejudice, and that Plaintiffs be granted leave to file a second amended complaint.

Dated:  July 14, 2017                              **POMERANTZ LLP**
                                                   */s/ Jeremy A. Lieberman*

                                                   Jeremy A. Lieberman
                                                   Emma Gilmore
                                                   600 Third Avenue, 20th Floor
                                                   New York, New York 10016
                                                   Telephone: (212) 661-1100
                                                   Facsimile: (212) 661-8665

                                                   *Lead Counsel for Lead Plaintiff and Plaintiff Warren Ramanathan*

                                                   **BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
                                                   Peretz Bronstein
                                                   60 East 42nd Street, Suite 4600 New York, NY 10165 Telephone: (212) 697-6484 Facsimile (212) 697-7296
                                                   Email: peretz@bgandg.com

                                                   *Additional Counsel for Lead Plaintiff and Plaintiff Warren Ramanathan*